In the Matter of TAX SALE OF 2003 UPSET

**Appeal of John L. Gerholt.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 9, 2004.

Decided Nov. 5, 2004.

Jennifer Swigart Newman, Huntingdon, for appellant.

Patricia A. Gardner, Lewistown, for appellee.

BEFORE: SMITH–RIBNER, Judge, and COHN JUBELIRER, Judge (P.), and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

John L. Gerholt (Gerholt) appeals from an order of the Court of Common Pleas of Mifflin County (trial court) dismissing his exceptions to the sale of his land at an upset sale. The trial court did so because Gerholt had actual and timely notice of the sale, leading the trial court to conclude that Gerholt's actual notice cured any defects in the statutory notice requirements.

The relevant facts to emerge at the hearing on Gerholt's objections are as follows. Gerholt is the record owner of property located in Wayne Township, Mifflin County (Property), which consists of approximately 2 acres of land improved by a garage and driveway. Gerholt purchased the Property in 2000 with his wife, Jennifer E. Gerholt. In 2002, the Gerholts separated; prior to that event it had been Mrs. Gerholt who paid taxes on the Property. Gerholt did not receive notice from the Mifflin County Tax Claim Bureau (Tax

Claim Bureau) that taxes on the Property were delinquent or that the Property was listed for sale. However, on September 3, 2003, Gerholt visited the Property with his daughter, who discovered the tax sale notice. Specifically, Gerholt's daughter found the tax sale notice taped to a tree near the Gerholt mailbox located across the road from the Property and not on the Property itself.

Gerholt took the notice to his attorney the following day, September 4, 2003. Gerholt and his attorney agreed that Gerholt should contact the Tax Claim Bureau to resolve the matter. Gerholt did so the following day by telephone, identifying himself and the purpose of his call. Gerholt asked to speak to the "lady in charge" "concerning my property to keep it from being sold." Reproduced Record 19—20a. (R.R. ——). Because the "lady in charge" was unable to take the call, Gerholt left his name and his mother's phone number and was advised that his call would be returned. It was not. On Monday, September 8, 2003, at 7:00 p.m., the Property was sold at the tax upset sale.

The Director of the Tax Claim Bureau (Director) explained the efforts made to collect taxes on the Property. In 2002, the Tax Claim Bureau mailed a notice by certified mail to Gerholt at 117 Water Street, Mt. Union, Pennsylvania, to notify him that the taxes on the Property were delinquent. The certified mail return card was returned, indicating receipt on February 21, 2002, and signed by Erma Gerholt, Gerholt's mother. The Water Street address was obtained from the Tax Assessment Office, and it was that shown on the recorded deed to the Property.

The Director also testified about the efforts undertaken by the Tax Claim Bureau to give Gerholt notice of the impending tax sale. On July 7, 2003, it sent a notice by certified mail to Gerholt at the Water Street address, but this time the certified letter was returned as not deliverable as addressed. The Tax Claim Bureau called the Post Office and was informed that the addressee had moved over 18 months ago and that the forwarding order had expired. The Tax Claim Bureau then checked the telephone directory, the internet, the office of the Tax Collector, the Recorder of Deeds, the Tax Assessment Office and *per capita* tax information in an effort to locate Gerholt's current address.

On August 21, 2003, the Tax Claim Bureau mailed two letters by first class mail addressed to Gerholt. The first was mailed to the 117 West Water Street address, and the second to 117 West Water Street, McVeytown, Pennsylvania. The Tax Claim Bureau decided to try the second address simply because the street addresses in both towns were the same. Both letters were returned as undeliverable.

On July 29, 2003 the Tax Claim Bureau posted notice of the sale at the Property. The Director explained that the Tax Claim Bureau's records contained notations that the posting was done on "pole by driveway," "gate" "across drive." R.R. 47a. The Tax Claim Bureau also gave notice by newspaper.[1]

The Director also explained the Tax Claim Bureau's procedures for dealing with delinquent taxpayers. All phone calls to her are memorialized on pink phone slips and placed on her desk. She had no evidence that Gerholt called and thought it unlikely that a phone slip noting Gerholt's request for a return call would have been misplaced. In any case, the Tax Claim Bureau staff was instructed and able to handle inquiries from delinquent taxpay-

---

1. The parties stipulated that the notice by     newspaper publication was appropriate.

ers. Any staff member would have been able to provide information to Gerholt about the amount of the tax delinquency and how to stay the tax sale of the Property.

At the conclusion of the hearing and upon consideration of all the evidence, the trial court dismissed Gerholt's exceptions to the tax sale. It found that Gerholt had actual notice of the impending sale by way of the posted notice with sufficient time to contact the Tax Claim Bureau and to resolve the tax delinquency before the scheduled sale. It concluded that Gerholt's actual notice of the impending sale cured any defects in the statutory notice requirements.

Upon appeal to this court, Gerholt presents three arguments for our consideration.[2] He first argues that the trial court erred in overruling his objections because the Tax Claim Bureau failed to meet its burden of proof on the posting requirement of Section 602 of the Real Estate Tax Sale Law (Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.602. Second, he contends the Tax Claim Bureau failed to prove that the notice was posted on the Property, as opposed to near the Property. Third, he argues that the trial court erred in concluding that Gerholt's actual notice of the impending tax sale cured any defects in the Tax Claim Bureau's failure to comply with the statutory notice requirements.

▮ Gerholt's first two issues can be treated as one, *i.e.,* whether the Tax Claim Bureau satisfied the provisions of Section 602(e) of the Law. There is no dispute that the Tax Claim Bureau satisfied this burden with respect to direct notice to the delinquent taxpayer and with respect to

notice by newspaper publication. The only question is with respect to the posting on the Property.

▮ It is well settled that the taxing authority has the burden of proving compliance with the statutory notice provisions. *Casanta v. Clearfield County Tax Claim Bureau,* 62 Pa.Cmwlth. 216, 435 A.2d 681, 683 (1981). There must be strict compliance with the notice requirements in the Real Estate Tax Sale Law to guard against the deprivation of property without due process of law. *Difenderfer v. Carbon County Tax Claim Bureau,* 789 A.2d 366, 368 (Pa.Cmwlth.2001). Section 602 however does not prescribe a particular method of posting; it merely states that "[e]ach property scheduled for sale shall be posted at least ten (10) days prior to the sale." Section 602(e)(3) of the Law, 72 P.S. § 5860.602(e)(3).

In the instant matter, Gerholt argues that the Tax Claim Bureau did not meet its burden of proof because his testimony established that the notice was not posted on the Property, but, rather, across the road. He argues that the Director's testimony that the business records of the Bureau, with references to the notations "pole by driveway," "gate" and "across drive" were insufficient to sustain its burden of proof because the Director did not have "direct knowledge about the manner of posting the property and only offered as a business record a photocopy of the office copy of the Notice of Public Sale to illustrate the manner of posting of the property." Gerholt's Brief at 8. Gerholt directs our attention to *In re Dauphin County Tax Claim Bureau,* 834 A.2d 1229 (Pa. Cmwlth.2003) and *Consolidated Return by*

---

**2.** Our review is limited to determining whether the trial court abused its discretion, clearly erred as a matter of law or rendered a decision unsupported by the evidence. *Consoli-*

*dated Return by McKean County Tax Claim Bureau of 9/12/2000,* 820 A.2d 900, 901 n. 2 (Pa.Cmwlth.2003.)

*McKean County Tax Claim Bureau of 9/12/2000,* 820 A.2d 900 (Pa.Cmwlth.2003) as support for his argument that the Tax Claim Bureau's evidence did not satisfy its evidentiary burden.

In *Dauphin County,* the record owner contested, *inter alia,* whether the tax claim bureau had properly posted the property prior to a tax sale. The tax claim bureau presented the testimony of the individual responsible for posting the notice of the sale, but the record owner testified that he never saw the posted notice. In resolving the conflict, the trial court noted that the tax claim bureau's witness could not recall the specific details of the posting because he had posted about 500 properties that day. Thus, it gave greater weight to the record owner's testimony and set aside the tax sale. This Court affirmed, noting that it was the trial court's responsibility to weigh conflicting testimony, to make credibility determinations and to make the critical findings of fact. So long as these findings are supported by substantial evidence, they may not be set aside on appeal. *Dauphin County,* 834 A.2d at 1232.

In *McKean County,* the record owner also challenged the tax sale of his property by contending that the required notice had not been posted. The tax claim bureau presented the testimony of the individual responsible for posting the property, who testified that the notice had been placed on a telephone pole. The record owners presented five witnesses who testified they lived nearby the property, visited it daily and did not see a notice on the telephone pole. In resolving the conflict in evidence, the trial court noted that the tax claim bureau's witness could not recall the manner of posting the property in question

because he had done so many. As in *Dauphin County,* the trial court resolved the conflict in evidence in favor of the record owner and this Court affirmed, deferring to the trial court's factual findings. *McKean County,* 820 A.2d at 903.

*Dauphin County* and *McKean County* are distinguishable. First, the record owners did not have notice of the tax sale in advance of its occurrence, as did Gerholt. Second, the record owners contended that the notice was not posted at all. In this case, Gerholt had actual notice of the impending sale from the notice, and he concedes that the notice was posted "on or near" the Property.[3] The trial court did not reach the issue of whether the notice was actually posted on the Property, reasoning instead that Gerholt's actual notice of the impending sale cured any defects in compliance with the statutory notice requirements.

Section 602 of the Law does not explicitly state that a notice must be posted on the property subject to sale. It merely states that "[e]ach property scheduled for sale shall be posted at least ten (10) days prior to the sale." 72 P.S. § 5860.602(e)(3). We have interpreted Section 602(e)(3) to mean that the method of posting must be reasonable and likely to inform the taxpayer of an intended real property sale. *Lapp v. County of Chester,* 67 Pa.Cmwlth. 86, 445 A.2d 1356, 1358 (1982).

The posting required by the Law serves two purposes. It provides notice of the impending tax sale not only to the record owner but also to the public at large. This is important for third parties whose interest may be affected, such as mortgagors or other lien holders, and it advances the goal

**3.** Gerholt alleged that the notice was posted "on or near" his Property in the Objections and Exceptions filed with the trial court, R.R.

65a, and in correspondence from Gerholt's attorney to the Tax Claim Bureau. Certified Record, Hearing Exhibit 4.

of increasing the number of bidders for the property. With more bidders, a higher sale price, presumably, will be realized, which benefits the delinquent taxpayer. *In re Upset Price Tax Sale of Sept. 10, 1990,* 147 Pa.Cmwlth. 52, 606 A.2d 1255, 1258 (1992).

In this case, there was no house on the Property, making the posting more of a challenge. Thus, the Tax Claim Bureau chose to post the notice near the mailbox for the Property, according to Gerholt's testimony, or on a "pole by driveway," "gate" "across drive," according to the records of the Tax Claim Bureau. R.R. 47a. Under either factual scenario, the notice was posted in a manner where it was likely to be seen, notifying both Gerholt and the general public.[4] Given those facts, the posting was reasonable.[5]

■ Further, we disagree that the Tax Claim Bureau did not satisfy its evidentiary burden. Its business records, which were admitted as probative evidence, indicated that the notice was posted on a pole in the driveway of the Property. This posting even complies with Gerholt's view of what Section 602 of the Law requires, *i.e.,* that the notice must be posted on the property itself. It may be that the Tax Claim Bureau's notice was moved to the tree next to the Property's mailbox or that

a second notice was posted there. Even if we agreed with Gerholt that the description in the business records was not sufficiently detailed to prove that a posting was accomplished, Gerholt's testimony was very detailed.[6] The trial court could have relied upon Gerholt's testimony alone to find that the Tax Claim Bureau satisfied the statutory requirements inasmuch as the notice posted near the Property's mailbox was likely to, and did, inform him and the public of the pending sale.

■ However, the trial court did not make a finding as to whether the Tax Claim Bureaus posting satisfied the requirements of Section 602(e) of the Law. Instead, the trial court held that if there was a defect in the manner of posting, it was cured because Gerholt found the notice while visiting the Property, and he found the notice in time to correct the tax delinquency and stop the sale. The dispositive issue, then, is whether a defect in posting can be cured by actual notice to the record owner where, as here, a tax claim bureau demonstrates that a posting was done.

Gerholt argues that actual notice does not cure a posting defect, contending that the cases relied upon by the trial court are inapposite to this situation because they did not involve a challenge to posting.[7]

---

4. Gerholt also provided testimony that the posting was public and conspicuous. When asked why the notice caught his daughter's attention, he stated, "[b]ecause it's right on the berm of the road." R.R. 27a.

5. This is not to say that, as a general matter, a posting need not be located on the property scheduled for sale.

6. Gerholt testified that his daughter found the notice on a tree, "[d]irectly across from my driveway on the opposite side of my mailbox, on the neighbor's property, taped." R.R. 25a; n. 4 *supra.*

7. The trial court relied upon *In re Sale of Real Estate By Montgomery Tax Claim Bureau for 1997 Delinquent Taxes,* 836 A.2d 1037 (Pa. Cmwlth.2003) for the proposition that actual notice trumps the statutory notice requirements. We agree with Gerholt that the language supporting this principle in *Montgomery Tax Claim Bureau* is *dicta* and simply recites our holding in *Stanford–Gale v. Tax Claim Bureau of Susquehanna County,* 816 A.2d 1214, 1219 (Pa.Cmwlth.2003) (holding that notice to a co-administrator of a decedent's estate will cure the lack of notice to the other administrator). *Stanford–Gale* is not as directly on point as other cases in this area that are discussed *infra.*

Instead, Gerholt suggests that we apply the holding in *In re Tax Sale of 28.8525 Acres in Middlecreek Township Tax Sale No. 12434,* 688 A.2d 1239 (Pa.Cmwlth.1997) to set aside the sale of the Property. A review of the principles established in the relevant case law is, accordingly, appropriate to a resolution of the question of whether Gerholt's actual notice cured a defect in the posting requirements, assuming there was a defect.

▪ Actual notice to a record owner will not always cure a defect in the posting because, as noted, the purpose of the posting is to alert not just the record owner but the public at large. Thus, this Court has set aside tax sales where the posting notice was merely handed to the owner, *In re Sale of Real Estate by Montgomery County Tax Claim Bureau for 1997 Delinquent Taxes,* 836 A.2d 1037 (Pa.Cmwlth. 2003), or where the notice was folded and thumb-tacked at the keyhole level of a door frame. *In re Upset Price Tax Sale of Sept. 10, 1990, supra.* In *Middlecreek,* upon which Gerholt relies, one of the record owners, Mrs. Mognet, had signed for the notice of sale sent by certified mail, but the second record owner did not receive actual notice. However, it was stipulated by the parties that the tax claim bureau did not post notice of the sale. We found Mrs. Mognet's actual notice did not excuse the obligation of the tax claim bureau to undertake a posting because the posted notice was for the benefit of the public and not just the record owners.

This situation is different. Here, the Tax Claim Bureau posted the Property and did so in a way that made it likely to be seen by the public, as evidenced by the fact that Gerholt and his daughter saw the posting.

This Court has waived compliance with the strict statutory notice requirements of Section 602(e) where the record owner has actual notice of the tax sale in certain circumstances. In *Casaday v. Clearfield County Tax Claim Bureau,* 156 Pa. Cmwlth. 317, 627 A.2d 257 (1993), a tax sale notice was sent by certified mail to the record owner's predecessor in title because the record owner's deed was not recorded until two days after the mailing. The newspaper publication and posting also used the predecessor's name. The record owner, however, had contacted the tax claim bureau seeking an exoneration of the taxes owed, was informed of the date of the tax sale five times and called the tax claim bureau twice on the day of the sale to check the status of the sale. The Court held that under these facts, where the record owner has received actual notice, the formal requirements of Section 602(e) of the Law need not be perfectly satisfied.[8]

In *Sabbeth v. Tax Claim Bureau of Fulton County,* 714 A.2d 514 (Pa.Cmwlth. 1998), we also waived strict compliance with the statutory notice requirements. In that case, Mrs. Sabbeth, the record owner, had received two years of notices that her taxes were in arrears. Further, Mrs. Sabbeth worked directly across the

---

8. We relied upon *In re Tax Claim Bureau of Lehigh County 1981 Upset Tax Sale Properties (Hass Appeal),* 96 Pa.Cmwlth.452, 507 A.2d 1294 (1986). In *Hass,* the taxpayer did not receive personal or certified mail notice of the tax sale but had actual notice. The taxpayer hired counsel to represent her in the sale and presented an estoppel argument, contending that the tax claim bureau had misled both her and her counsel. In denying the taxpayer's petition to set aside the sale, the trial court reasoned that the taxpayer's argument under these facts would exalt form over substance, ignoring the purpose of the statutory notice requirement to afford a taxpayer an opportunity to present objections. We affirmed, reasoning that although strict compliance was necessary to guard against deprivations of property without due process of law, there was also a need for flexibility where, as here, the owner had actual notice.

street from her property where the notices had been posted. Most importantly, Mrs. Sabbeth regularly went to her office to review the mail, where a certified letter from the tax claim bureau notifying her of the sale remained upon her desk unattended for 53 days after the tax sale. Finding Mrs. Sabbeth's claim that she had not been given actual notice of the tax sale incredible, this Court held that implied notice is encompassed in the definition of actual notice. *Id.* at 517. We looked at the totality of the circumstances involved to reach the conclusion that the owner had received actual notice of the tax sale. We declined to reward her effort, or non-effort, to avoid the consequences of her notice, holding that strict compliance with the statutory notice requirements had been waived.

Given the totality of the circumstances in this case, we agree with the trial courts conclusion. Here, unlike the case in *Middlecreek,* the posting of the Property was undertaken by the Tax Claim Bureau, and it was, in fact, effective. Accordingly, *Middlecreek* is not dispositive. On the other hand, we find *Sabbeth* to be compelling precedent. The evidence is unequivocal that the Tax Claim Bureau undertook to satisfy all three aspects of notice: direct notice by certified mail, newspaper publication and posting. Gerholt had several days to act but, like Mrs. Sabbeth, chose a dilatory course of conduct. Thus, assuming that posting a notice across the street from the Property in a place where it was likely to be seen did not comply with Section 602(e), that requirement has been waived because Gerholt received actual notice from the posting.

■ Strict compliance with the notice provisions of the Law is required to guard against the deprivation of property without due process of law. Due process requires that an owner of land be *actually* notified by government, if reasonably possible, before his land is forfeited by the state. *Tracy v. County of Chester, Tax Claim Bureau,* 507 Pa. 288, 297, 489 A.2d 1334, 1339 (1985). Having received notice and the opportunity to stay the sale of the Property, Gerholt is not now in a position to assert the need for strict compliance with the posting requirements for tax sale notices imposed by the Real Estate Tax Sale Law.

For these reasons, the order of the trial court is affirmed.

### ORDER

AND NOW, this 5th day of November, 2004, the order of the Court of Common Pleas of Mifflin County dated January 30, 2004 in the above-captioned case is hereby affirmed.

DISSENTING OPINION BY Judge SMITH–RIBNER.

I respectfully dissent. The notice provisions of the Real Estate Tax Sale Law [1] are to be strictly construed, and a tax sale is void if any of the required types of notice is defective. *In re Sale of Real Estate by Montgomery Tax Claim Bureau,* 836 A.2d 1037 (Pa.Cmwlth.2003). The absence of or a substantial defect in posting is sufficient to render a tax sale void, even if the property owners receive notice of the sale by mail and notice of the sale is properly published. *Chester County Tax Claim Bureau v. Griffith,* 113 Pa. Cmwlth. 105, 536 A.2d 503 (1988); *In re Sales of Properties by Indiana County Tax Claim Bureau,* 22 Pa.Cmwlth. 147, 348 A.2d 440 (1975). It is, of course, a tax

---

1. Act of July 7, 1947, P.L. 1368, *as amended,*   72 P.S. §§ 5860.101–5860.803.

bureau's burden to show that a property was properly posted. *In re Upset Price Tax Sale of September 10, 1990,* 147 Pa. Cmwlth. 52, 606 A.2d 1255 (1992).

In this case, I do not believe the Mifflin County Tax Claim Bureau (Bureau) presented sufficient evidence to sustain its burden of showing proper posting, and I do not agree that Appellant's actual notice of the tax sale is sufficient to ignore the real possibility that the notice was posted on the wrong property. First, the Bureau presented a copy of the posting of public sale, showing that the property was posted on July 29, 2003. That document contained the notations "pole by driveway," "gate" and "across drive," allowing one to infer that the notice was posted on one of the "poles" holding what Appellant described as a "low cable" preventing cars from entering the property's driveway. Although Nancy Laub, the Bureau's witness, could vouch for the authenticity of the posting notice she was unable to answer any questions regarding the actual posting, and the unidentified individual who posted the property did not testify. Appellant testified at length that the notice was taped to a tree, across the road, on a neighboring property. He was cross-examined at length and maintained his position, and the Bureau presented no rebuttal testimony. (Notably, the trial court declined to make any findings on the issue of whether Appellant's property was properly posted.)

Second, I reject the notion that, because Appellant had actual notice of the impending sale, it matters not whether the notice was posted on Appellant's property or on a neighbor's property. Section 602(e)(3) of the Real Estate Tax Sales Law, 72 P.S. § 5860.602(e)(3), requires that the "property scheduled for sale" shall be posted at least ten days prior to the sale, a rule that is mandatory and one to which a tax bureau must strictly adhere. *Ganzer v. Erie County Tax Claim Bureau,* 163 Pa. Cmwlth. 522, 529, 641 A.2d 1261, 1264 (1994) ("Although the word 'shall' may be construed to be either directory or mandatory ... it admits of no argument that as used in Section 602(e)(3), and considering the purpose of posting, the word 'shall' imposes a mandatory duty to post a notice of the tax sale *on the property subject to the sale*") (emphasis added).

In *Chester County Tax Claim Bureau,* this Court addressed a factual scenario similar to the one presented here, noting the following evidence:

> In the case at hand the testimony presented by Appellants revealed that a county sheriff and his deputy went to the property in order to post it. According to the sheriff, he directed the deputy ... to post the property and that the property was properly posted.... However, Griffith presented two witnesses, Michael Lindenlauf and Robin Doll, in support of his position that the property [Lot 49, 1.9 acres] was not properly posted. Lindenlauf was the owner of property located near Griffith's property. Lindenlauf ... while walking with Mr. Doll on another nearby lot, this lot known as Lot 51 ... a tax sale notice was found posted to a tree.... Mrs. Doll testified that while Lindenlauf and her husband were walking in the woods on a nearby lot (Lot 51), they found a tax sale notice for the Griffith property posted to a tree. Based upon the evidence before it, the trial court concluded that the property was not properly posted.

*Chester County Tax Claim Bureau,* 536 A.2d at 504. Because the tax sale notice was posted on the wrong property, the court invalidated the tax sale despite the fact that the appellant had actual notice of the sale.

It is true that actual notice excuses what may fairly be characterized as *technical* defects in posting. *Donofrio v. Northampton County Tax Claim Bureau*, 811 A.2d 1120 (Pa.Cmwlth.2002) (tax bureau's failure to use correct font in mail and posting notices excused because property owner had actual knowledge of sale); *Casaday v. Clearfield County Tax Claim Bureau*, 156 Pa.Cmwlth. 317, 627 A.2d 257 (1993) (tax bureau's failure to put correct name on posted notice, listing predecessor owner instead of current owner, excused because current owner had actual knowledge of sale); *cf. In re Sale of Real Estate by Montgomery Tax Claim Bureau* (notice that is not posted but handed to property owner does not satisfy posting requirement because it does not inform the general public). There can be no more fundamental requirement of the Tax Sale Law than that the posted notice of sale actually be posted on the property subject to sale. Moreover, if strictly applied, the Court need not speculate on whether a notice, erroneously posted on a nearby property, adequately informs a property owner and the public of a pending sale of another property, which was not properly posted.[2]

Because the Bureau failed to present sufficient evidence of its proper posting of Appellant's property in conformity with the Tax Sale Law, the Bureau did not sustain its burden of proof. Accordingly, I would reverse the order of the trial court and invalidate the tax sale in this case.

---

**2.** Although Gerholt had actual notice of the sale, he testified that he ignored the notice on the tree because it was on a neighbor's property.